(110 App. Div. 462)

### LINZY v. WHITNEY et al.

(Supreme Court, Appellate Division, Fourth Department. January 3, 1906.)

1. WILLS—CONSTRUCTION—ESTATES CONVEYED.

A testator bequeathed to his wife his personalty, subject to the payment of his debts and certain expenses. He devised to her the life use of his realty. He devised one-third of the realty to her, but provided that, in case of her remarriage. she, as executrix, should sell the land, and. after satisfying "all the provisions hereinbefore made," should herself receive one-third, and the other two-thirds should be divided among other devisees. *Held*, that she was not entitled on remarriage to a life estate in the realty or the proceeds of its sale.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1431.]

2. SAME—CONDITIONS.

A testator devised to his wife the life use of his land and a third of the fee, but provided that in case of her remarriage she should sell the land and divide the proceeds, taking one-third for herself, subject to prior provisions of the will. One of the provisions was for a home for the testator's mother so long as she lived in the house on his farm. She lived there till it was burned, when she went to live with a surviving son. *Held*, that he was entitled to compensation for her care out of the

testator's estate, and that an aliquot portion of the burden should fall on the widow, on the sale of the land after her remarriage.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2115.]

3. SAME—CHARGE ON DEVISE.

Where a testator left to his widow the life use of his land, and provided a home for his mother so long as she should live in the house on his farm, the widow is not entitled to any compensation for the care of testator's mother; this being an incumbrance attached to the life use of the farm.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 2114, 2118, 2121.]

4. SAME.

Where a testator provided for the sale of his realty on the remarriage of his widow, the proceeds to be applied to the satisfaction of prior provisions of the will, and, the remainder divided, and one of the prior provisions was for the support of testator's mother, such support was a charge on the proceeds of the sale of the land.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2119.]

5. EXECUTORS—ACCOUNTING.

Where a testator devised to his wife the life use of his realty, but made certain debts and expenses a charge on his realty to the extent of the insufficiency of his personalty therefor, and directed his wife as executrix to sell part of his realty or standing timber to pay such sums, leaving to her judgment what portions of land or timber to sell, she is chargeable on the settlement of her account for the sums received for timber cut and sold above what was necessary for the payment of the debts and expenses.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 469.]

6. SAME—INSURANCE.

An executrix, who was also the devisee of a life estate and one-third of the fee in land subject to the payment of the debts of the testator's estate, was properly charged with the proceeds of an insurance policy received by her with the consent of a mortgagee of the testator, less the premium therefor, under. a policy taken out individually by her before the will was, proved and made payable to the mortgagee as his interest might appear.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 297.]

Appeal from Special Term, Livingston County.

Action by Harriet A. Linzy against Leonard Whitney and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and HISCOCK, JJ.

Myron N. Tompkins, for appellant.

William Carter, for respondent Whitney.

Kidder M. Scott, for respondent Mary E. Whitney.

SPRING, J. The action is partition, commenced by the widow of Charles S. Whitney, who died March 9, 1899, leaving a last will and testament, the construction of which is involved. The testator left no children; but the plaintiff, his widow, who has since remarried, and his mother, who was living with him at the time of his death, survived him. Referring to the provisions of the will pertinent to the pending controversy, we find that the personal property was bequeathed to his widow subject to the payment of debts, expenses,

and the expenditure of $1,000 for a monument. Testator also devised to his wife the life use of the real estate of which he died seised and which consisted of a farm, and then to his children, if any. He devised one-third of the land of which he died seised, in case he died without any children, to his wife, and the remaining two-thirds to others named in the will, "subject, however, to the foregoing expenses and the life estate." This item continues as follows:

"But in case my wife, Harriet, shall again marry, then and in that event I authorize and direct her as the executrix hereof to sell all the land and convey the same to the proper purchasers by proper deeds to be executed by her as such executrix, and, after paying all the payments and satisfying all the provisions hereinbefore made, to divide the remainder of the proceeds among and pay the same to herself the one-third, and the others two-thirds equally to said Leonard, Talmage, and Franklin as above provided."

There was a mortgage on the farm of $1,300, which the testator made chargeable "one-third on that portion devised to the wife and the other two-thirds" upon the balance of said premises. The plaintiff has commenced her action upon the assumption, and now contends, that she became vested with the life estate, notwithstanding her marriage, and that the division of the avails of the sale or of the premises, if unsold, was not to be made until after her death. We concur with the learned court below that this construction was not intended by the testator. Laying aside the question of his children, he had two considerations in view when providing for his wife's portion of the real estate. If she remained his widow, she was to have the exclusive use of the premises and one-third in fee. In the eighth paragraph of his will he had in mind the possibility of her remarriage, and in that event he directed an immediate sale of the farm and the disposition of its proceeds. He still adhered to the one-third to his widow, but the fact that he ordered a sale by the executrix in the event of her remarriage is incompatible with the retention of the life estate by her. He made no provision for the investment of the avails of the sale for her benefit, but imperatively required her to make the division provided for. The division is to be made "after paying all the payments and satisfying all the provisions hereinbefore made," and it is strenuously urged that the life estate is one of the provisions to which the clause has reference. The language is sufficiently comprehensive to include the life estate, but there are other provisions to which concededly it relates. In construing the will we must keep in mind the purpose of the testator, that he intended a different distribution of his estate in case his widow remarried. He then provided for an equitable conversion of his land into money and its distribution, and this scheme is repugnant to the life estate provision, which was to be effective as long as the plaintiff remained his widow.

The mother of the testator resided with the plaintiff on the farm, as she had done before his death, until the dwelling house thereon burned. Since that time she has lived with another son, and the proof shows the board and care furnished by this son are worth $5 a week; and compensation for that sum has been awarded in the judgment, and the net avails of the sale are directed to be invested by the county treasurer, primarily to meet the continued expense

of caring for her at that rate. By the fourth paragraph of the will the testator provided a home for his mother as long as she lived, "provided she accepts the same at the house on my farm, but, in case she resides or stays elsewhere than at the house where I shall live up to the time of my death, then she is not entitled to any support or maintenance from my estate," and he further directed the executrix to furnish her "with a home at the house which shall be my residence at the time of my death, consisting of board, rooms, lodging, and proper care." This provision for his mother was made by the testator in anticipation of the widowhood of the plaintiff continuing, and upon the assumption, therefore, that the farm was to remain unsold and the fruits inure to the plaintiff. The dwelling house, as noted, burned in February, 1901, and an entirely different situation was presented from that contemplated by the testator. The widow, after a few days, remarried, but continued to occupy and receive the avails of the farm. The husband erected a small temporary house on posts on the farm, in which he and the plaintiff resided until the November following. The plaintiff since the fire has not manifested any desire to take care of the mother of the testator, and has made no effort to do so. The intention of the testator cannot be carried out literally, but the judgment does make effective the essence of that intention by providing for the maintenance of the mother, who was 92 years of age at the time of the trial, out of the entire net proceeds of the sale. This direction only imposes the aliquot part of the burden upon the plaintiff, and is as fair a distribution as can be made, and reasonably carries out the purpose of the testator to provide for her support out of his estate. It does no injustice to the plaintiff; for, if she had not remarried, the burden would probably have been borne by her in connection with the life tenancy. Nor is the plaintiff entitled to compensation for maintaining and caring for her mother-in-law up to the time of the fire. It is clear that the testator expected that this was one of the incumbrances attached to the life use of the farm.

It is also urged that the support of the mother is not made a charge upon the real estate. The direction to sell the farm and distribute the avails has coupled with it, not only the payment of the sums provided for in the will, but the satisfaction of "all the provisions hereinbefore made," and only "the remainder of the proceeds" was to be divided. The testator in this part of his will had in view the farm when converted into money, and the obligations he made a charge upon his property were intended to be taken care of out of these avails. This suggestion disposes, also, of the payment of $100 for the burial expenses of Ezra Whitney, a brother of the testator, which is also provided for in the judgment.

The testator, by the second paragraph of his will, directed the payment of $1,000 for a monument to his parents, his debts and expenses out of his personal estate primarily, but charged the payment thereof upon his real estate in case the personal property was insufficient therefor; and he authorized the executrix "for that purpose * * * to sell at public or private sale such of my real estate or standing trees or timber as may be sufficient therefor, leaving to the good judgment

of my executrix what portions of land or timber, either or both, to sell." The plaintiff caused growing trees on the farm to be cut and manufactured into lumber, realizing therefrom $279, which she used and has not accounted for. Upon the judicial settlement of her account it appeared she had overpaid $63.44 as executrix, and that sum comprised the only inadequacy of assets in the administration of the estate. The judgment requires her to account for the sum so received, less the overpayment. As life tenant she had no authority to cut the standing timber, and by so doing she committed waste. As executrix her authority was definitely limited by the will to cutting and selling timber to meet the expenses and debts. Within the narrow compass her power was plenary, but when she undertook to cut standing timber for her own benefit she was beyond the scope of her authority. Neither as executrix or life tenant was she entitled to cut this timber and use the avails individually.

At the death of the testator the dwelling house and contents were not insured. On the 5th day of May, 1899, the plaintiff caused the dwelling house to be insured for $1,200, and the contents, barn, and other property for $1,300, all in one policy of $2,500. The policy was made payable to the plaintiff individually, containing a clause, however, "in case of loss, payable to Josephine D. Blake, mortgagee, as her interests may appear." The mortgage referred to was an existing incumbrance upon the farm at the time of the death of Mr. Whitney. The plaintiff personally paid the premium on this policy. The will was proved on the 27th day of May, 1899. The dwelling house burned in February, 1901. The $1,200 insurance thereon were paid to the plaintiff, and she claims the money belonged to her individually. At the time of its payment her husband owned the Blake mortgage, and consented to the payment of the avails to her. Her contention is that when the policy was issued she was not then executrix or trustee, as the will had not been admitted to probate, and she simply insured her own interest. If her somewhat strained position is correct, she had no interest for her life tenancy, and her title to the undivided one-third depended upon the will. However, when the will was proved, it was operative from the death of the testator, and her transactions in connection with the management of this property must be construed in the light of that fact. As life tenant the duty was upon her to insure and protect the property. Whatever she did for its preservation or permanent benefit must be assumed to have been done either as trustee of the property or as life tenant for the benefit of the remaindermen as well as herself, unless the contrary clearly appears. Of course, she could insure her own interest independently of the other interests. But she did not do that. The policy does not purport to relate solely to her own title, but is general in form, covering the property as a whole, the same as if she was vested with the entire ownership.

Another significant answer to her contention is the clause making the loss, if any, payable to the mortgagee. If she individually was taking out this insurance, she would not be providing for the payment of a general lien on the property in case of loss. The judgment directs her to account for this money, less the insurance premiums

she paid, as part of the general estate committed to her, and we are satisfied that the direction is just.

The other criticisms upon the judgment discussed in the brief of the appellant require no especial comment. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.